UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| AMANDA STRONG, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2:16-00001 |
| HMA FENTRESS COUNTY GENERAL HOSPITAL, LLC d/b/a JAMESTOWN MEDICAL CENTER, *et al.*, | ) ) ) ) ) | Judge Sharp |
| Defendants. | ) | |

## MEMORANDUM

In this action, removed from the Fentress County, Tennessee Circuit Court, Plaintiff Amanda Strong sues her former employer Defendant, Fentress County General Hospital d/b/a Jamestown Medical Center ('the Hospital"), and her former supervisor, Kevin Crabtree ("Crabtree"), for alleged sexual harassment. She brings claims under the Civil Rights Act of 1991, Pub. L. No. 102-166, § 2(1), 105 Stat. 1071; Title VII, 42 U.S.C. § 2000e, *et seq.*; and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.* She also brings common law claims for retaliation and intentional infliction of emotional distress.

Defendants have filed a Motion to Dismiss (Docket No. 20) all claims against Crabtree, as well as Plaintiff's claims against the Hospital for retaliation and the intentional infliction of emotional distress. That Motion has been fully briefed by the parties and, for the reasons that follow, will be granted in part and denied in part.

**I. Counts One Through Three – Title VII, the THRA and the Civil Rights Act of 1991**

Count One of the Second Amended Complaint alleges violations of Title VII, while Count

1

Two alleges intentional discrimination. Insofar as those claims are directed at Defendant Crabtree - a point unclear from the Second Amended Complaint - they are subject to dismissal.

Title VII, of course, prohibits discrimination in employment, including sexual harassment, and the Civil Rights Act of 1991 makes compensatory and punitive damages available for intentional violations of Title VII. Both statutes "are essentially silent on the issue of individual liability," Williams v. Banning, 72 F.3d 552, 553 (7th Cir. 1995), but have been interpreted as not providing for personal liability. The Sixth Circuit first "squarely addressed" this issue in Wathen v. General Electric Co., 115 F.3d 400, 405 (6th Cir. 1997), and "h[e]ld that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII," and that the Civil Rights Act of 1991 "contains no provision for damages to be paid by individuals, further evidencing a lack of congressional intent to hold individuals liable."

In her response brief, Plaintiff does not argue otherwise. Accordingly, dismissal as to Crabtree is warranted with respect any claim under Title VII or the Civil Rights Act of 1991.

Similarly, there is no independent supervisory liability under the THRA for sexual harassment. Carr v. United Parcel Serv., 955 S.W.2d 832, 834 (Tenn.1997), overruled on other grounds, Parker v. Warren Cty. Util. Dist., 2 S.W.3d 170 (Tenn.1999).[1] Apparently recognizing as

---

[1] Prior to July 1, 2014, the THRA defined a discriminatory practice to include any situation where one or more persons aided, abetted, incited, compelled or commanded a person to engage in a discriminatory Act. See Rhea v. Dollar Tree Stores, 395 F. Supp.2d 696, 705-06 (W.D. Tenn. 2005) (citations omitted) ("The THRA 'generally does not impose individual liability on supervisors or co-workers' for discrimination in the workplace" but "does impose liability on 'an individual who aids, abets, incites, compels, or commands an employer to engage' in discriminatory conduct prohibited by the THRA"). However, that language was removed effective July 1, 2014, with the THRA now stating that "[n]o individual employee or agent of an employer shall be liable for any violation of [employment related discrimination] that any employer shall be found to have committed." Tenn. Code Ann. § 4-21-301(b).

much, Plaintiff asserts that this claim is not grounded solely on sexual harassment, but also on malicious harassment, which the Tennessee Supreme Court in Washington v. Robertson County, 29 S.W.3d 466, 474 (Tenn. 2000) recognized as allowing for individual liability. However, in so doing, the Washington court observed that the THRA "in general, addresses discrimination based on race, creed, color, religion, sex, gender or national origin," but that "[t]he legislative history of Tenn. Code Ann. § 4-21-701 indicates that the supporters of the legislation favored creation of a civil remedy for so-called 'hate crimes' committed by ethnic and racial supremacist groups such as the Ku Klux Klan, Aryan Nation and Skinheads." Id at 471.

Post-Washington, it has been repeatedly held that "in order to be actionable under T.C.A. § 4-21-701, malicious harassment must be based on the victim's 'race, color, ancestry, religion or national origin.'" Harvey v. LaDuke, 2006 WL 694640, at *10 (Tenn. Ct. App. Mar. 20, 2006) (quoting, Surber v. Cannon, 2001 WL 120735 (Tenn. Ct. App. Feb. 14, 2001)); see also Herndon v. Shelby Cty., 2013 WL 4048548, at *13 (W.D. Tenn. Aug. 6, 2013) ("Plaintiff does not allege at any point in his Complaint or Amended Complaint that the motivation for his allegedly unlawful detention was based upon race, color, ancestry, religion, or national origin. Absent such an allegation, Plaintiff may not pursue a claim for malicious harassment under THRA."); Blaque v. Renaissance Healthcare Grp., 2011 WL 5828024, at *1 (E.D. Tenn. Nov. 18, 2011) ("[W]hile the THRA addresses discrimination on the basis of race, creed, color, religion, sex, gender, or national origin, . . . a claim for malicious harassment must be based on the victim's 'race, color, ancestry, religion or national origin' – not, therefore, on the victim's gender.").

Because Plaintiff only alleges harassment based on gender, she has failed to state a claim under the THRA against Crabtree, or a claim for malicious prosecution against either Defendant.

3

Moreover, her malicious harassment claim fails as to both Defendants for the additional reason that such a claim "requires not only that a person acted maliciously, . . . but also that a person unlawfully intimidated another from the free exercise or enjoyment of a constitutional right." Washington, 29 S.W.3d at 473. and the Second Amended Complaint contains no allegations that either Defendant intimidated Plaintiff regarding the exercise or enjoyment of a constitutional right.[2]

## II. Count Four – Retaliation

In Count Four, Plaintiff alleges retaliation in violation of the Tennessee Human Rights Act, and the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304 (commonly referred to as the "Whistleblower Act"). She also brings a claim for common law retaliation.[3]

Plaintiff's retaliation claims appear to be directed solely at the Hospital because the Second Amended Complaint references "actions . . . by Defendant Jamestown Regional Medical Center" and speaks of Defendant's (in the singular) discrimination. (Docket No. 18, Second Amended Complaint ¶¶ 52-53). To the extent that the Second Amended Complaint can be read as alleging a retaliation claim against Crabtree, however, that claim is subject to dismissal for the reasons already stated regarding the THRA, and also because "[c]ourts have uniformly held that individual supervisors cannot be named as defendants under the TPPA or under Tennessee common law." Garner v. SDH Servs. E., LLC, 55 F. Supp. 3d 1016, 1023 (M.D. Tenn. 2014) (collecting cases).

Plaintiff's common law retaliation claim against the Hospital is also subject to dismissal.

---

[2] This does not affect Plaintiff's sexual harassment/hostile work environment claims under the THRA against the Hospital.

[3] "The primary difference in the statutory version of the cause of action is that it requires an employee to show that his or her refusal to remain silent was the *sole* reason for the discharge, whereas a common law claimant must show only that his or her refusal to remain silent was a substantial factor motivating the discharge." Haynes v. Formac Stables, Inc., 463 S.W.3d 34, 37 (Tenn. 2015) (italics in original).

4

"Effective July 1, 2014, the TPPA was amended to specifically 'abrogate[ ] and supersede[ ] the common law with respect to any claim that could have been brought under this section.'" Williams v. City of Burns, 465 S.W.3d 96, 110 (Tenn. 2015) (quoting Tenn. Code Ann. § 50-1-304(g) (2014)). "Accordingly, under the statute as amended, in cases in which the plaintiff alleges retaliatory discharge for refusing to participate in illegal activities or for refusing to remain silent about illegal activities, the TPPA is the exclusive basis for relief." Id.

Here, Plaintiff alleges that she "was effectively discharged for having to tolerate sexual harassment," and that the Hospital "terminated Plaintiff's employment effective November 1, 2014, which discharge was solely for Plaintiff's refusal to endure, and therefore participate in and remain silent about her supervisor's, Defendant Crabtree's, sexual harassment." (Docket No. 18, Second Amended Complaint ¶ 55). Since her discharge occurred after the effective date of the amendment to the TPPA, her common law retaliation claim is not viable.

In arguing otherwise, Plaintiff relies on Guy v. Mutual of Omaha Insurance Co., 79 S.W.3d 528 (Tenn. 2002). That reliance is misplaced.

In Guy, the Tennessee Supreme Court held that the TPPA was "cumulative, rather than preemptive" to the common law. Id. at 537. But in so doing, the court observed:

> After carefully reviewing the Whistleblower Act to determine whether its remedies are intended to be exclusive, we note that on its face, the clear and plain language of the text contains no such indication of exclusivity. While the General Assembly possesses the authority to abrogate the common law by statute, see Lavin v. Jordon, 16 S.W.3d 362, 368 (Tenn. 2000), the "rules of the common law are not repealed by implication, and if a statute does not include and cover such a case, it leaves the law as it was before its enactment." Id. (citations omitted). Consequently, as we reasoned in Hodges,
>
>> [g]iven that our recognition in Clanton of a common law tort action for retaliatory discharge predated the [1990 Whistleblower Act], that the Legislature is presumed aware of this prior recognition, and that

5

> the remedies subsequently provided by the [Act] are not expressly stated to be exclusive, then the statutory remedies must be considered cumulative.
>
> 833 S.W.2d at 899; see also Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822, 825 (Tenn. 1994) (upholding a common law action for retaliatory discharge in addition to the remedies provided under section 50–1–304). Moreover, our decisions in Hodges and Ozark Motor Lines were written well after the enactment of section 50–1–304. Clearly, if the legislature had wanted to foreclose a common law cause of action, it had more than ample opportunity to do so; indeed, it could have done so recently when, in 2000, it amended the statute to allow successful plaintiffs to recover attorney fees and costs.

Id. at 536-37. While the legislature did not foreclose a common law cause of action when § 50-1-304 was amend in 2000, it did so – in no uncertain terms – in 2014.

### III. Count V – Intentional Inflictions of Emotional Distress

In Count Five, Plaintiff brings claims for the intentional infliction of emotional distress against both Defendants. Intentional infliction of emotional distress, also known as the tort of outrageous conduct, has three elements: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). "Liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.

Even though it "is well accepted that intentional infliction of emotional distress claims may entirely appropriately be dealt with . . . in a motion to dismiss," Miller v. Currie, 50 F.3d 373, 377-78 (6th Cir. 1995), and "Tennessee courts have indicated that trial courts should be wary of permitting IIED claims to move forward in employment discrimination cases, absent exceptional

6

allegations," DeSoto v. Board of Parks & Recreation, 64 F. Supp. 3d 1070, 1095-96 (M.D. Tenn. 2014), the Court finds that dismissal at this time would be premature. Plaintiff's allegations state at least a colorable claim upon which relief can be granted.

The first and third elements of an intentional infliction of emotional distress are clearly met - Plaintiff alleges that Defendants' acts were intentional and that, as a result of Crabtree's actions and the Hospital's inaction, she suffered a mental breakdown. The second element - outrageousness - is a closer call. Nevertheless, and when the facts are accepted as true and construed in Plaintiff's favor as they must be for present purposes, Benzon v. Morgan Stanley Distributors., 420 F.3d 598, 605 (6th Cir. 2005), they suggest repeated and consistent untoward actions by Crabtree, and the ignoring of complaints about that conduct by the Hospital. More specifically, Plaintiff alleges "ongoing and contiun[ing] sexual harassment," that began by Crabtree invading Plaintiff's personal space "to an uncomfortable degree" and then progressed, with Plaintiff alleging that Crabtree (1) "leaned his penis into Plaintiff's buttocks area"; (2) blatantly and continually stared at her breasts, instead of looking in her face; (3) inquired into whether she and her husband were "having marital difficulties"; (4) "attempt[ed] to gain control over [her] cell phone in order to check her personal text messages and pictures"; (5) "visiting a restaurant where Plaintiff's minor daughter worked"; (6) following Plaintiff around the Hospital; (7) repeatedly making "inappropriate comments"; and (8) "call[ing] out Plaintiff's name and gyrating his pelvis at her." Plaintiff also alleges that she complained about the ongoing harassment on three occasions in March and April 2014 to the Human Resources Director at the Hospital yet, despite the promise that an investigation would be undertaken, the harassment continued unabated through August 2014. (Docket No. 18, Second Amended Complaint ¶¶ 13-26).

Plaintiff's allegations suggest more than "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities," Swallows v. Western Electric Co., 543 S.W.2d 581, 582-83 (Tenn. 1976), as well as "[i]naction by an employer . . . in the face of continuous, deliberate, degrading treatment," Pollard v. E. I. DuPont de Nemours Co., 213 F.3d 933, 947 (6th Cir. 2000), rev'd on other grounds, 532 U.S. 843 (2001). Under Rule 8(a) of the Federal Rule of Procedure, all that is required "is a short and plain statement of the claim showing that the pleader is entitled to relief," and, under Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), "only enough facts to state a claim to relief that is plausible on its face." The Court will not dismiss Plaintiff's intentional infliction of emotional distress claim on the pleadings against either Defendant.

## IV. Conclusion

On the basis of the foregoing, Defendants are entitled to dismissal of (1) all claims against Crabtree, except for the intentional infliction of emotional distress claim; (2) a claim for malicious harassment; and (3) the common law claim for retaliation against the Hospital.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE